**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LIONRA TECHNOLOGIES LIMITED, | Case No. 2:22-cv-305-JRG-RSP |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS FOR
<u>INELIGIBILITY OF U.S. PATENT NO. 7,916,630 UNDER 35 U.S.C. § 101</u>**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND .............................................................................................. 1

    A.      The '630 Patent ................................................................................... 1

    B.      Procedural Background ........................................................................ 4

III.    LEGAL STANDARD ....................................................................................... 5

    A.      Rule 12(b)(6) ....................................................................................... 5

    B.      Patent Eligibility ................................................................................. 5

IV.     THE '630 PATENT CLAIMS ARE NOT PATENT-ELIGIBLE ..................... 6

    A.      *Alice* Step One:  The Claims Are Directed to an Abstract Idea ............. 6

    B.      *Alice* Step Two:  The Claims Lack an Inventive Concept .................. 10

V.      THE INELIGIBILITY OF THE CHALLENGED CLAIMS IS RIPE FOR
    DETERMINATION ........................................................................................ 12

VI.     CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)................................................................................6

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)................................................................................5, 9, 10

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................4

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012)................................................................................12

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................4

*In re Bilski*, 545 F.3d 943 (2008),
    *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010)........................................................5, 9

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)................................................................................8

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)................................................................................11

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017)................................................................................12

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................................4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)................................................................................3, 4, 5, 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)................................................................................9, 11

*In re Gale*,
856 F. App'x 887 (Fed. Cir. 2021) ........................................................................9

*Kumar v. Ovonic Battery Co.*,
351 F.3d 1364 (Fed. Cir. 2003).............................................................................6

*Mad Dogg Athletics, Inc. v. Peloton Interactive, Inc.*,
No. 2:20-CV-00382-JRG, 2021 WL 4206175 (E.D. Tex. Sept. 15, 2021) ...........................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)....................................................................................5, 10

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
811 F.3d 1314 (Fed. Cir. 2016).......................................................................7, 10

*Network Architecture Innovations LLC v. CC Network Inc.*,
No. 2:16-CV-00914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) ............................12

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015)........................................................................4, 11

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
No. 2:15-CV-1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016) ............................12

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)...........................................................................12

*Secured Mail Sols. LLC v. Universal Wilde*,
873 F.3d 905 (Fed. Cir. 2017)........................................................................6, 12

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019).............................................................................6

*Thompson v. City of Waco*,
764 F.3d 500 (5th Cir. 2014) ..............................................................................4

*In re TLI Commc'ns LLC Patent Litigation*,
823 F.3d 607 (Fed. Cir. 2016).........................................................................5, 9

*Two-Way Media, Ltd. v. Comcast Cable Communications*,
LLC 874 F.3d 1329 (Fed. Cir. 2017) .......................................................................6

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)........................................................................6, 10

*V-Formation, Inc. v. Benetton Grp. SpA*,
401 F.3d 1307 (Fed. Cir. 2005).............................................................................5

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ...................................................................................................6

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| '630 Patent | U.S. Patent No. 7,916,630 |
| Cisco | Cisco Systems, Inc. |
| Lionra | Lionra Technologies Limited |

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---------|----------|
| A | '630 Patent |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Cisco respectfully requests that Lionra's claims for infringement of the '630 Patent be dismissed with prejudice on the basis that the claims of the '630 Patent are not patent eligible under 35 U.S.C. § 101.

## I.   INTRODUCTION

The claims of the '630 Patent are directed to a remarkably simple abstract idea: each component of a system monitors just one neighboring component, instead of requiring each component or a central coordinator to monitor all components.  This is akin to the well-known "buddy system" long used in the military and in school settings to monitor group members, and the claims do not recite any specific technological improvements to implement this basic concept. Instead, the claims recite no more than conventional technology functioning in its routine manner. Thus, because the claims are directed to the abstract idea of monitoring system components by instructing each component to monitor a single neighbor, and contain no inventive concept amounting to significantly more than the idea itself, the Court should find the claims ineligible.

## II.   BACKGROUND

### A.    The '630 Patent

The '630 Patent relates to monitoring a system's distributed components.  '630 Patent at 1:14–17.  The monitoring is accomplished, for example, using a known Ping-Pong mechanism. *Id.* at 1:28–41.  Under that approach, one component monitors another component by periodically sending a Ping to that other component, which responds with a Pong to confirm it is operational. *Id.*  The specification concedes that various approaches for monitoring a system's distributed components were already "known from the related art."  *Id.* at 1:30. For example, in one known approach, every component monitors every other component by periodically sending a Ping to all components.  *Id.* at 1:46–57.  In another known approach, a central coordinator monitors the status of each component.  *Id.* at 2:17–23.

The '630 Patent's purported advance is to provide a method which "simplifies" this monitoring "or enables [monitoring] with a reduced resource requirement."  *Id.* at 2:30–35. Specifically, instead of each component monitoring every other component, or having a central coordinator monitor each component, the claims of the '630 patent recite that each system component monitors only one other component.  *Id.* at 2:46–48; 6:28–33.  The patent does not require any new technology for that purpose, and does not recite any technological improvements to carry out this basic method.  To the contrary, the specification admits that the components in the distributed system can be organized as already known in the art, using a logical ring structure— a designated consecutiveness not necessarily connected to a physical order.  *Id.* at 2:40–45; 6:5–6 (admitting that logical ring structure was "known from the related art").  Then, according to this logical order, each component can be assigned to monitor one and only one neighboring component.  *Id.* at 2:46–48; *see also* 6:28–33.  If a monitoring component determines its neighbor has failed, the monitoring component may inform all the other components.  *Id*. at 5:22–25.

The specification does not purport to disclose any new ways for a monitoring component to determine whether its neighbor has failed, or any new ways for informing the other components about the failure.  Rather, the specification merely provides that such monitoring take place (for example, using the Ping-Pong mechanism known in the art) and that the monitoring component "informs the other components of the system" about the results.  *Id.* at 2:49–53.

### 1.      The Claims of the '630 Patent

The '630 Patent has 15 claims.  Claims 1 (method), 14 (computer-readable medium), and 15 (network) are independent.  Claim 1, the only claim identified by Lionra in its Complaint, is reproduced below:

> 1. A method for monitoring a system condition of a network with distributed components organized in a logical ring structure, comprising:

each component in the system monitoring only a single respective
neighboring component among said distributed components that
is a predecessor or successor of said each component in the
logical ring structure to determine a current condition of the
respective neighboring component; and

each component in the system informing all other components of the
system about the current condition of the respective neighboring
component when the current condition corresponds to at least
one predefined condition.

'630 Patent at 6:25–38; *see also* Dkt. No. 1 ("Compl.") at ¶ 17.  Claims 14 and 15 are identical to

Claim 1, except that they are directed to a computer-readable medium and network respectively.

Thus, Claim 1 is representative of the independent claims.  *See Content Extraction & Transmission*

*LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (a district court need

not expressly address each asserted claim where the court concludes that particular claims are

representative because all the claims are substantially similar and linked to the same abstract idea).

The remaining claims, Claims 2–13, all depend from Claim 1.  They merely add limitations

about what is being monitored, what messages are sent by or to the monitoring component, and

storing the results.  Claim 2 recites that the monitoring is performed to determine whether the

monitored component is online or offline.  '630 Patent at 6:39–42.  Claims 3–6 recite using a

monitoring mechanism called "leasing," whereby the monitored component sends out a periodic

message (*e.g.*, "Alive" information) without waiting for a Ping from the monitoring component.

*Id.* at 3:43–46.  The '630 Patent does not identify anything as allegedly inventive about this

"leasing" approach using "Alive" messages, and instead explains that it was already the case that

"[t]he term 'alive' has become widely accepted among experts" as indicating "functional capacity"

of a network component.  *Id.* at 3:41–42.  Claims 7–9 merely address what messages are sent about

the results of the monitoring.  The monitoring component uses an "Inform All" method (Claim 7)

and the other components send back an "Acknowledgement" message (Claims 8–9).  *Id.* at 6:57–

3

7:4.  Claim 10 adds that if any components do not respond with an "Acknowledgement" message, they are determined to be offline.  *Id.* at 7:5–9.  Claim 11 adds the step of storing information about the results of the monitoring.  *Id.* at 7:10–12.  Claim 12 recites that the "neighboring component" being monitored sits before or after the monitoring component in the known logical ring structure—i.e., it is either a "predecessor component" or a "successor component"—which is already recited in Claim 1 so does not truly add anything.  *Id.* at 7:13–15; same at 6:28–31.  Finally, Claim 13 recites that the disclosed network is a "stationary communication network" and the components are "communication servers," none of which are purportedly new or inventive.  *Id.* at 7:16–19.

Thus, none of the dependent claims recite anything beyond identifying the components being monitored, what they are being monitored for, the message names being sent, and the storing of results.  Accordingly, Claim 1 is representative of the dependent claims, because those claims merely provide further routine steps for performing the abstract idea: monitoring a system by having each component monitor only a single neighboring component.  *Content Extraction*, 776 F.3d at 1349; *see also Mad Dogg Athletics, Inc. v. Peloton Interactive, Inc.*, No. 2:20-CV-00382-JRG, 2021 WL 4206175, at *4 (E.D. Tex. Sept. 15, 2021).  At most, the dependent claims may be characterized as insignificant, extra-solution activity or as routine data-gathering steps, which cannot transform the claims in to patent-eligible subject matter and therefore do not impact the substantive analysis.  *See, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).  Nevertheless, the Court need not reach whether Claim 1 is representative of the dependent claims, because Cisco addresses the substance of each claim below.

### B.    Procedural Background

On August 18, 2022, Lionra filed suit alleging Cisco infringes five of its patents.  *See* Compl.  Only Lionra's allegations with respect to the '630 Patent are at issue in this motion.  *Id.*

4

¶¶ 2, 12–20.  The Complaint contains no allegations regarding the claimed subject matter of the '630 Patent or any inventive concept contained therein.  *Id.*

## III.    LEGAL STANDARD

### A.    Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state facts making the plaintiff's claim to relief plausible on its face.  *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads enough facts to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The court accepts well-pleaded facts as true, and views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true.  *Id.*

The court must limit its review "to the contents of the pleadings."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  However, documents attached to a defendant's motion to dismiss are considered a part of the pleadings if they are referred to in the complaint and are central to the claim.  *Id.*

### B.    Patent Eligibility

The legal question of patent eligibility involves a two-step "threshold inquiry."  *In re Bilski*, 545 F.3d 943, 950 (2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010).  First, the court must "determine whether the claims at issue are directed to a patent-ineligible concept."  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014).  In doing so, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and 'software-based invention [] that improve[s] the performance of the computer system itself.'"  *Amdocs*

5

*(Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (alteration in original) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)).

If the court determines the challenged claims are directed to a patent-ineligible concept, it must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)).  This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction* , 776 F.3d at 1347–48 (quoting *Alice*, 573 U.S. at 224).

The claim language governs the Section 101 analysis, but the specification can assist in determining whether claims are directed to an abstract idea.  *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016).  In addition, the Federal Circuit has "established that 'prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence.'" *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005) (quoting *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003)).  Finally, the Federal Circuit has held that "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde*, 873 F.3d 905, 913 (Fed. Cir. 2017)  (citation omitted).

## IV.   THE '630 PATENT CLAIMS ARE NOT PATENT-ELIGIBLE

### A.   *Alice* Step One:  The Claims Are Directed to an Abstract Idea

The *Alice* Step One inquiry "look[s] at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity*

*Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016); *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021).  This determination "must focus on the language of the [a]sserted [c]laims themselves, considered in light of the specification."  *Yu*, 1 F.4th at 1043 (alteration in original) (citation omitted).

Not all of the claim limitations need to be abstract in order for the claims to be directed to an abstract idea at Step One.  *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (*quoting Affinity*, 838 F.3d at 1257).  Instead, a claim is abstract at Step One if "the concept embodied by the majority of the limitations" describes an abstract idea.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).  To this end, the claim is to be read as a whole, considering all the claimed elements and the interactions between them.  *Two-Way Media, Ltd. v. Comcast Cable Communications*, *LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

Here, the challenged claims of the '630 Patent are directed to the abstract idea of monitoring system components by requiring each component to monitor only one neighboring component.  This is evident from the claims and the specification.

Beginning with the claim language, Claim 1 recites a method for monitoring with only two steps: "monitoring" a single neighbor, and then "informing" the other components if there is an issue with the component being monitored (i.e., if its "condition correspondents to at least one predefined condition").  '630 Patent at 6:25–38.  This idea is undeniably abstract, and the claimed solution has long been implemented in a variety of real-world situations outside of computer technology.  For example, any adult who has attended a school field trip knows it is difficult for a central coordinator to keep track of the status of each and every child.  It would also be inefficient to ask each child to monitor the status of each and every other child in the group.  Instead, we ask each child to monitor only one buddy and to notify the group if that buddy is in a predefined

condition, *e.g.*, lost or injured.  The central focus of the '630 Patent claims is to apply this same abstract idea using known, generic computer components operating in their routine fashion.

Further, and as discussed above, the dependent claims of the '630 Patent are directed to this same abstract idea.  *See supra* II. A. 1.  Claim 2 merely adds that the monitored condition is whether the neighboring component is online or offline—akin to monitoring whether a buddy on a school field trip is awake or asleep.  Claims 3–6 merely recite using a "leasing" method for monitoring, where the neighboring component sends an "Alive" message without waiting for the monitoring component to ask if it is online—akin to having a buddy check in regularly rather than waiting to be asked to do so.  Claims 7–9 merely address what messages are sent about the results of the monitoring, with an "Inform All" and an "Acknowledgement" message—akin to a child yelling to the group if her buddy is missing, and the group acknowledging that fact.  Claim 10 merely adds that if any components do not respond with an "Acknowledgement" message, they are determined to be offline too—akin to finding out during the group check-in that other children have gone missing too.  Claim 11 merely adds the step of storing information about the results of the monitoring—akin to keeping a list of the children missing and accounted for.  Claim 12 merely recites that the "neighboring component" being monitored is either a "predecessor component" or a "successor component"—akin to assigning buddies based on alphabetical name order, or any other logical order such as standing in a line.  All of these claims merely recite steps performed by generic "components" using functional language that is directed to carrying out the abstract idea disclosed in Claim 1.   Thus, the dependent claims are all abstract at Step One.  *See, e.g.*, *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016).

Finally, Claim 13 recites that the disclosed network is a "stationary communication network" and the components are "communication servers," but that does not render the claimed

method nonabstract.  Rather, it merely identifies the environment in which the abstract method is performed.  This is akin to reciting the use of the buddy system in an elementary school where the buddies are second-graders, rather than in a family outing where the buddies are siblings.  It does not change the abstract nature of the method itself, and thus does not save the claim under Step One.  *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (attempting to limit the use of the idea to a particular technological environment is insufficient).

Next, the broader context of the '630 patent as a whole, which has only three pages of disclosure before the claims, also confirms that the claims as a whole are directed to the abstract idea of monitoring a system by having each component monitor only one neighboring component.  For example, the Abstract describes the focus of the claims as follows:

> "In a system having distributed components arranged in a logical ring structure, each component monitors only their respective neighboring component in the structure and the condition of the neighboring component is determined.  If a component determines a condition of its neighboring component that corresponds to a predefinable condition, the component informs the other components of the system of the predefined condition of the neighboring component."

'630 Patent at Abstract.  The specification then admits that monitoring all of the components of a system, as well as notifying all of the components of a system of the status of the other components, were known in the art.  *Id.* at 1:14–56, 2:54–56.  Thus, the only alleged difference between the claimed invention and the prior art is that instead of each component, or a central planner, monitoring every other component, the claims recite each component monitoring only a single neighboring component—its buddy.  And the patent does not disclose or claim any specific technological improvements to achieve that basic goal.

The claims are thus abstract at Step One because the underlying solution claimed in the '630 Patent—instructing each component to monitor one and only component—is not one that addresses a problem specifically arising in the realm of computer networks, and instead is an

abstract solution to a general problem of monitoring, which the claims merely recite in the context of conventional computer components. *See Alice*, 573 U.S. at 222 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." (alteration in original) (quoting *Bilski*, 561 U.S. at 610–11)); *see also In re TLI Commc'ns.*, 823 F.3d at 612 (holding claims ineligible because they were "directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two"). The Federal Circuit has consistently held that claims similarly directed to monitoring operations are ineligible. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) (holding ineligible claims directed monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results); *see also In re Gale*, 856 F. App'x 887 (Fed. Cir. 2021) (holding ineligible claims direct to monitoring a critical test result message management system and reporting results on whether a calculated usage pattern complies with a predetermined usage pattern).

Accordingly, the focus of the claimed advance is a basic, known idea for monitoring, applied to the known environment of a distributed computer system (instead of, for example, school children), and is therefore directed to an abstract idea at *Alice* Step One.

### B.    *Alice* Step Two:  The Claims Lack an Inventive Concept

At *Alice* Step Two, courts are directed to "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (alteration in original) (internal quotation omitted). When doing so, courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Id.*

at 217 (quoting *Mayo*, 566 U.S. at 77–79).  To satisfy Step Two, the claims must "involve more

than performance of 'well-understood, routine, [and] conventional activities previously known to

the industry.'"  *Content Extraction*, 776 F.3d at 1347–48 (alteration in original) (quoting *Alice*,

573 U.S. at 225).

Here, the claims recite no inventive concept.  Indeed, the search at *Alice* Step Two is

especially straightforward.  First, the Complaint does not address the subject matter of the '630

Patent, and thus does not contribute to the inquiry.  *See* Compl. ¶¶ 2, 12–20.  Second, there is

simply nothing in any limitation considered individually or as an ordered combination that would

transform the claimed abstract idea of monitoring one and only one neighboring component into a

patent-eligible idea.  As discussed above, Claim 1 covers ordering components, instructing each

component a single neighbor to monitor, and instructing each component to inform the other

components if there is an issue with the component being monitored.  '630 Patent at 6:25–38.  This

"ordered combination" simply instructs the practitioner to implement the abstract idea—

monitoring a system by having each "component" monitor one and only one neighboring

component—via routine, conventional activity using generic computer technology.  *See*

*Ultramercial*, 772 F.3d at 715; *see also Mortg. Grader*, 811 F.3d at 1323.

As to the dependent claims, as discussed throughout, they cover only abstract limitations,

"insignificant, extra-solution activity," and "routine data gathering steps," including: monitoring

only whether the neighbor is online or offline (Claim 2); having the monitored component send a

periodic message (*e.g.*, "Alive" information) without waiting for a corresponding Ping (Claims 3–

6); using an "Inform All" and "Acknowledge" method to verify with the other components when

a component is offline (Claims 7–9); identifying additional components that are offline (Claim

10); storing information about the status of the components (Claim 11); and monitoring a particular

neighbor ("predecessor" or "successor") (Claim 12).  These claims do not recite any particular technological component that is improved or used in an unconventional manner.  *See supra* II. A. 1.  Thus they do not impart any inventive concept under Step Two.  *See, e.g.*, *OIP Techs.,* 788 F.3d at 1364.  Further, Claim 13 merely recites a known environment for performing the abstract idea— a "stationary communication network" of "communication servers"—which is insufficient to transform the claims under *Alice* Step Two.  *See, e.g.*, *Elec. Power*, 830 F.3d at 1354 (holding that limiting the claims to a particular technological environment of "power-grid monitoring" was insufficient to find an inventive concept).

Accordingly, at *Alice* Step Two, the claims of the '630 Patent fail to recite any inventive concept that amounts to significantly more than the abstract idea found at the core of the claims: monitoring only a single neighboring component.  Therefore, the Court should rule that all claims of the '630 Patent are ineligible under Section 101.

## V.   THE INELIGIBILITY OF THE CHALLENGED CLAIMS IS RIPE FOR DETERMINATION

Finally, there is no reason for the Court to defer the determination of ineligibility to a later stage of this case.  The Federal Circuit has explained that a district court should grant a Rule 12 motion to dismiss for lack of patent eligibility when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019).  That is the case here.  Indeed, the Federal Circuit has repeatedly explained that ineligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion," even "before claim construction or significant discovery has commenced" and "based on intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'"  *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed.

Cir. 2017); *Secured Mail*, 873 F.3d at 912.  "Where it is clear that claim construction would not affect the issue of patent eligibility, there is no requirement that the court go through that exercise before addressing the eligibility issue." *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016) (Bryson, J.) (citing *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012)).  Instead, when the "'basic character of the claimed subject matter' in dispute is clearly evident to the Court," no further construction of the claims is required.  *See Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG, 2017 WL 1398276, at *3 (E.D. Tex. Apr. 18, 2017).

Here, as explained above, the abstract character of the claimed subject matter—having each component monitor only a single neighboring component instead of each component of a system—is clear from the language of the claims itself and confirmed by the remainder of the patent, and does not require claim construction or factual discovery.[1]  Allowing Lionra's infringement claims as to the '630 Patent to proceed would be a waste of judicial and party resources that could be otherwise directed to the efficient litigation of the claims of the remaining four asserted patents. In this vein, it is worth noting that the subject matter of the claims of the '630 Patent and the accused products are entirely distinct from the remaining allegations.  *See* Compl. ¶¶ 17–20.  Thus, because there is no need for claim construction or factual discovery, allowing the claims of the '630 Patent to proceed would inevitably require additional (and unnecessary) time and expense from the parties and the Court, and would result in the same issue being presented to the Court

---

[1] Lionra informed Cisco during a meet and confer that it is not presently aware of any claim construction issue that would prevent the Court from deciding patent eligibility on Cisco's motion under FRCP 12(b)(6).

later in the matter on essentially the same record.  Accordingly, Cisco respectfully requests that the Court hold as a matter of law that the claims of the '630 Patent are ineligible.

**VI.      CONCLUSION**

      For the foregoing reasons, Cisco respectfully moves that the Court hold that the claims of the '630 Patent are not eligible under 35 U.S.C. § 101, and dismiss Lionra's claims against Cisco under the '630 Patent with prejudice.

Dated: October 17, 2022                    By   */s/ Brian Rosenthal*
_____

Brian A. Rosenthal (lead attorney)
brosenthal@gibsondunn.com
Katherine Dominguez
kdominguez@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Stuart M. Rosenberg
srosenberg@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

Albert Suarez IV
asuarez@gibsondunn.com
Texas State Bar No. 24113094
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX  75201-6912
Telephone:  214.698.3360
Facsimile:  214.571.2907

Melissa R. Smith
melissa@gillamsmithlaw.com
Texas State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903.934.8450
Facsimile: 903.934.9257

*Attorneys for Defendant Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2022, the foregoing was electronically filed in compliance with Local Rule CV-5(a) and served via the Court's electronic filing system on all counsel who have consented to electronic service.

*/s/ Brian Rosenthal*

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 MOTION PRACTICE ORDER

\_\_X\_\_   The parties agree that prior claim construction is not needed to inform the Court's analysis as to patentability.[2]

_____   The parties disagree on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

*/s/ Brian Rosenthal*

---

[2] On the meet and confer, counsel for Lionra agreed that claim construction is not needed to inform the Court's analysis as to patentability, but requested a reservation of rights until Lionra had the opportunity to review the subject motion.